Matter of Bachu (2025 NY Slip Op 04721)

Matter of Bachu

2025 NY Slip Op 04721

Decided on August 20, 2025

Appellate Division, Second Department

Per Curiam

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on August 20, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
BETSY BARROS
FRANCESCA E. CONNOLLY
LINDA CHRISTOPHER, JJ.

2022-05975

[*1]In the Matter of Darmin T. Bachu, an attorney and counselor-at-law. Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts, petitioner; Darmin T. Bachu, respondent. (Attorney Registration No. 2729630)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on April 17, 1996.

David W. Chandler, Brooklyn, NY (Sara Mustafa of counsel), for petitioner.
Foley Griffin, LLP, Garden City, NY (Thomas J. Foley of counsel), for respondent.

PER CURIAM

OPINION & ORDER
.The Grievance Committee for the Second, Eleventh, and Thirteenth
Judicial Districts served the respondent with a notice of petition and a verified petition, both dated July 26, 2022, containing four charges of professional misconduct. The respondent served and filed a verified answer dated August 16, 2022, admitting to some of the factual allegations contained in the petition but denying the conclusions of law contained therein. By amended answer dated January 23, 2024, the respondent admitted all of the factual specifications contained in the petition, except the respondent continued to "den[y] knowledge or information" that attorney Michael Gangadeen was immediately suspended from the practice of law by a decision and order of this Court dated February 22, 2016, as alleged in charge four of the petition. The respondent also continued to deny the conclusions of law contained in the petition. By decision and order on application dated November 2, 2023, this Court referred the matter to the Honorable Michael L. Pesce, as Special Referee, to hear and report. A preliminary conference at which the respondent did not appear was held on December 22, 2023, and a hearing was conducted on February 7, 2024. In his report, the Special Referee sustained all four charges in the petition. The Grievance Committee now moves to confirm the Special Referee's report and to impose such discipline upon the respondent as this Court deems just and proper. The respondent submits an affirmation which does not challenge the Special Referee's report or the Grievance Committee's motion and contends that the sanction of a public censure is appropriate based on the mitigation presented.
The Petition
The petition contains four charges of professional misconduct. The respondent maintained an escrow account at JPMorgan Chase Bank, titled "Darmin Bachu, Attorney at Law, Attorney Trust Account IOLA," with an account number ending in 6908 (hereinafter the escrow account). Charge one relates to 11 matters in which the respondent issued funds from the escrow account to his clients and/or for personal purposes when there were no and/or insufficient [*2]corresponding funds on deposit.
Chand Matter
On November 10, 2016, check number 5349 in the amount of $4,000, made payable to Monica Chand, cleared the escrow account. This check was payment to Chand for her share of a settlement. On November 14, 2016, check number 5354 in the amount of $2,000, made payable to the respondent for his legal fees, cleared from the escrow account. As a $6,000 settlement fund that the respondent received on behalf of Chand was not in the escrow account until November 29, 2016, check numbers 5349 and 5354 cleared against other client funds.
Frederic Matter
On December 14, 2016, check number 5379 in the amount of $8,333.33, made payable to the respondent for his legal fees in the Kasiana Frederic matter, cleared from the escrow account. As a $25,000 settlement fund that the respondent received on behalf of Frederic was not in the escrow account until December 16, 2016, check number 5379 cleared against other client funds.
On December 28, 2016, escrow check number 5393 in the amount of $8,333.33, made payable to the respondent purportedly for his legal fees, cleared from the escrow account, reducing the balance of the funds held for the Frederic matter to $8,333.34. On December 29, 2016, check number 5391 in the sum of $16,666.67, made payable to Frederic, cleared against other client funds.
Azeez Matter
On January 5, 2017, check number 5398 in the amount of $4,000, made payable to Shazam Azeez, cleared from the escrow account. This check was payment to Azeez for his share of a settlement. As a $6,000 settlement fund that the respondent received on behalf of Azeez was not in the escrow account until January 10, 2017, check number 5398 cleared against other client funds.
Johnson Matter
On January 19, 2017, check number 5409 in the amount of $1,666.66, made payable to the respondent for his legal fees in the Aura Johnson matter, cleared from the escrow account. As a $5,000 settlement fund that the respondent received on behalf of Johnson was not in the escrow account until January 27, 2017, check number 5409 cleared against other client funds.
Abrams Matter
On February 21, 2017, check number 5447 in the amount of $5,000, made payable to Michele Reynolds Abrams, cleared from the escrow account. This check was payment to Abrams for her share of a settlement. As the funds for a $7,500 settlement check that the respondent received on behalf of Abrams were not in the escrow account until February 22, 2017, check number 5447 cleared against other client funds.
Rahman Matter
On July 3, 2017, check number 5494 in the amount of $4,737.33, made payable to Minhajur Rahman, cleared from the escrow account. As the funds for a $4,737.33 settlement check that the respondent received on behalf of Rahman were not in the escrow account until July 31, 2017, check number 5494 cleared against other client funds.
Porter Matter
On July 24, 2017, check number 5489 in the amount of $1,179.40, made payable to Lester Porter, cleared from the escrow account. The respondent failed to deposit a settlement check in the amount of $1,179.40 that he received on behalf of Porter until July 31, 2017. Therefore, check number 5489 cleared against other client funds in the escrow account.
Juman Matter
In December 23, 2016, the respondent deposited a $10,000 settlement check into the escrow account on behalf of his client Feroz Juman. That same day, the respondent issued check number 5389 in the amount of $3,333.33, payable to himself for his legal fees in this matter, which also cleared on the same date. On January 30, 2017, check number 5420 (dated January 27, 2017) in the amount of $6,666.67, made payable to Juman cleared from the escrow account, reducing to $0 the balance in the escrow account held for Juman. On January 28, 2017, the respondent issued another check to himself in the amount of $3,333.33, purportedly for his legal fees in this matter, which cleared against other client funds in the escrow account on January 30, 2017.
Gomez Matter
On January 27, 2017, the respondent deposited a $115,460.01 settlement check into the escrow account on behalf of his client Lourdes Gomez. On January 30, 2017, the respondent [*3]issued check number 5424 in the amount of $67,711.98 to Gomez, representing her share of the settlement proceeds. On January 30, 2017, check number 5433 in the amount of $38,884.68, made payable to the respondent for his purported legal fees in the Gomez matter, cleared the escrow from account. On February 10, 2018, check number 5438 in the amount of $7,276.28, made payable to the respondent, cleared the escrow account. After these checks were issued, the balance held for Gomez in the escrow account was $1,587.07. Nevertheless, the respondent issued check number 5442 in the amount of $11,532.20 payable to Bridgeview Legal Funding to satisfy a lien on behalf of Gomez. On February 17, 2017, check number 5442 cleared, at least in part, against other client funds.
Deodharry Matter
On December 9, 2016, the respondent deposited a $12,000 settlement check into the escrow account on behalf of his client Davywattie Deodharry. After issuing check number 5377 in the amount of $3,903.33 to himself purportedly for his legal fees and check number 5388 in the amount of $8,000 to Deodharry, representing her share of the settlement fund, as of December 23, 2016, the remaining balance held for Deoharry in the escrow account was $96.67. Approximately six months later, the respondent issued check number 5533 in the amount of $290 to himself, purportedly for his expenses relating to this matter. On June 7, 2018, check number 5533 cleared, at least in part, against other client funds.
Deen Matter
On September 24, 2015, the respondent deposited a settlement check in the amount of $6,000 into the escrow account on behalf of his client Joshua Deen. On September 24, 2015, check number 4875 in the amount of $1,901.91, made payable to the respondent for his legal fees, cleared from the escrow account. On October 2, 2015, and check number 4885 in the amount of $3,803.84, made payable to Deen representing his share of the settlement funds, cleared from the escrow account. After the checks were issued, the remaining balance in the escrow account held for Deen was $294.25. More than two years later, on or about January 16, 2018, the respondent issued to Deen a second settlement check (number 5510) in the amount of $3,803.84, which cleared, at least in part, against other client funds in the escrow account.
Based on the forgoing, charge one alleges that the respondent engaged in a pattern of misappropriation of fiduciary funds, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0).
Charge two alleges that the respondent misappropriated fiduciary funds, in violation of rule 1.15(a) of the Rules of Professional Conduct, when check number 5458 in the amount of $11,000, made payable to Bhumilla Bachu, a family member, cleared from the escrow account on April 12, 2017, when there were no corresponding funds on deposit. Charge three alleges that the respondent failed to maintain required bookkeeping records for the escrow account, in violation of rule 1.15(d) of the Rules of Professional Conduct, when he failed to maintain a contemporaneous ledger or similar record for the escrow account showing the sources of all funds deposited, the names of all persons for whom the funds were held, a description and amount of funds held, and the names of all persons to whom the funds were disbursed.
Charge four alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct. Specifically, by order dated February 22, 2016, Michael Gangadeen was immediately suspended from the practice of law by this Court. Subsequent to Gangadeen's suspension, he requested that MetLife Insurance Company issue checks to the respondent totaling $425,883.30, representing funds owed to three of Gangadeen's former clients. On September 14, 2016, after depositing the MetLife checks into the escrow account, the respondent issued a check in the amount $420,883.30 ($5,000 less than the amount deposited into the escrow acccount), made payable to "Michael Gangadeen, Esq." The petition alleges that the respondent knew or should have known that Gangadeen had been suspended from the practice of law at the time of the transaction.
In the respondent's initial answer, he admitted some factual allegations but denied that he violated any Rules of Professional Conduct. In his amended answer, the respondent admitted that he engaged in a pattern of misappropriation of fiduciary funds and all the factual specifications as to charges one and two, but he continued to deny that he violated any Rules of Professional Conduct. The respondent admitted all the factual specifications as to charge three and denied that he violated any Rules of Professional Conduct. As to charge four, the respondent denied knowing that Gangadeen was a suspended attorney and denied violating any Rules of Professional Conduct. [*4]The Hearing Record
The respondent admitted that his law firm had maintained multiple escrow accounts
for the law firm's different practices. The respondent also admitted that prior to the Grievance Committee's investigation, he did not keep a ledger for the escrow accounts and there was "not much reconciliation." Regarding the Frederic matter, the respondent testified that when he withdrew his legal fees before the funds were available, it was "[j]ust poor management. Poor oversight. [A] [s]tupid mistake." The respondent paid himself twice in this matter. The respondent stated that because he did not have a ledger for the escrow account, he was distributing funds "in a haphazard way" and that he used previously issued checks to determine whether funds had been distributed.
For the Juman matter, the respondent admitted that he also paid himself twice due to the same lack of oversight.
Although not charged, at his examination under oath (hereinafter EUO), the respondent admitted that in April 2017, he paid a client, Toni Dixon, $22,000 in cash, purportedly because the client was disabled and did not have a bank account. The respondent also admitted issuing a check in the amount of $8,333 to Dixon, but the respondent did not explain how Dixon was able to cash that check. The respondent testified that the $22,000 he paid to Dixon came from cash that the respondent kept in his office, which came from the respondent's "big criminal defense practice." The respondent stated that he never withdrew $22,000 from the escrow account to reimburse himself because of "real bad bookkeeping." The respondent admitted that he began reconciling the escrow account and maintaining a ledger only after being investigated by the Grievance Committee. The respondent paid another client, Ricky Ramgobin, $6,809 in cash for that client's share of certain settlement funds. The funds paid to Ramgobin were taken from cash the respondent kept at his office, and the respondent never withdrew funds from the escrow account to reimburse himself.
Regarding the Deem matter where the respondent twice paid settlement funds to the client, the respondent testified that he had been "scammed" by the client because the client falsely claimed that he had not been paid. The respondent admitted, however, that when the client returned to the respondent's office two years after the client was originally paid his share of the settlement funds and asked for a second check, the respondent did not check his records before issuing a new check to the client.
As to charge two, the respondent explained that his father's sister-in-law was the payee of the $11,000 check. The respondent had borrowed funds from his cousin, the payee's daughter, and the check was to repay that loan. The respondent intended to issue the check from his business account and did not realize that he had issued the check from the escrow account until the Grievance Committee's investigation (more than one year later). The respondent stated that he did not reimburse the escrow account upon discovering this purported mistake because the respondent believed that he had personal funds in the escrow account. At his EUO, the respondent admitted that the $11,000 check to repay his loan cleared against other client funds in the escrow account.
As to charge four, during his EUO, the respondent admitted that he was aware Gangadeen had been suspended from the practice of law and that was why Gangadeen was referring cases to the respondent. Nevertheless, inexplicably, the respondent subsequently submitted an answer and an amended answer in which he claimed that he was not aware of Gangadeen's suspended status. According to the respondent, Gangadeen asked the respondent to take over a case where the "only work was to collect the settlement." The three clients were relatives of Gangadeen, and according to the respondent, had instructed the respondent in writing to issue the entire settlement fund to Gangadeen, minus $5,000 that the clients had agreed to pay the respondent for accepting the settlement checks. The respondent did not execute a retainer agreement or other formal documentation with these clients because the only remaining work on the case was to accept the settlement funds. The respondent further stated that he "did not take much of a fee on this." The respondent testified that based on the written instructions from the clients, he "assume[d] everything was okay" to distribute the funds to Gangadeen. The record includes a letter signed by the three clients, indicating that they "authorized" the respondent to pay their settlement funds to their cousin, Gangadeen. This letter was not executed in 2016, when the respondent testified that he received written permission to disburse the settlement funds to Gangadeen. Rather, the letter was dated February 10, 2022, seven days before the respondent's EUO. Therefore, the respondent's testimony that he received a written request/authorization from his clients before he issued the check to Gangadeen is unsupported.
The respondent testified that he has contributed to many charitable organizations and that he routinely has performed pro bono work when clients were unable to pay for his services. The respondent's law office also provided internships to high school students. The respondent submitted the testimonies of two character witnesses and nine character letters to support his mitigation. In further mitigation, the respondent testified that he made mistakes with his escrow account because he was "overwhelmed" by a criminal case brought against him by the Queens County District Attorney. The respondent stated, "In October 2016, unfortunately, I was chosen to be arrested for taking a tax credit. . . . For whatever reason, the [District Attorney's] office chose me. They usually don't arrest on these types of cases. . . . [T]he [District Attorney's] office singled me out and wanted to make some kind of spectacle of me." Due to the arrest, the respondent became depressed and complained to his general practitioner that he suffered from nervousness, anxiety, sleeplessness, and loss of appetite. The respondent was diagnosed with reactive depression and stress related to work problems. During cross-examination, the respondent admitted that the misconduct charged in the petition predated his criminal arrest and that the professional misconduct spanned more than three years. The respondent also admitted that he did not see a therapist when he was suffering from depression and anxiety, nor did his doctor recommend that he see one.
The Special Referee asked the respondent if he had other "incidents with law enforcement." The respondent answered that in early 2016, there was "an incident with the feds" wherein he was charged with writing an "improper letter for a client" who had committed fraud. The respondent stated that action was dismissed.
The Special Referee's Report
The Special Referee sustained all four charges in the petition and found that the respondent failed to submit any arguments or evidence to demonstrate the he was unaware of Gangadeen's suspension as an attorney by this Court's February 22, 2016 order. The Special Referee also found that the respondent had accepted responsibility and had a solid reputation in both the legal and civic community.
By notice of motion and affirmation both dated May 22, 2024, the Grievance Committee moves to confirm the report of the Special Referee, which sustained all four charges in the petition, and to impose such discipline upon the respondent as this Court deems just and proper. The Grievance Committee reports that the respondent's disciplinary history consists of the following: by order dated July 20, 2022, this Court censured the respondent based on his conviction on March 5, 2019, of attempted possession of stolen property in the fifth degree, in violation of Penal Law §§ 110.00, 165.40, a class B misdemeanor (see Matter of Bachu, 208 AD3d 39). The respondent was issued a Letter of Advisement in June 2022, and Letters of Caution in May 2014 and November 2015, all for misconduct unrelated to the escrow account.
The respondent submits an affirmation which does not challenge the Special Referee's report or the Grievance Committee's motion to confirm, but contends that a public censure is the appropriate sanction given the mitigation, among other things, that the respondent simply failed to properly manage his law practice during a "particularly stressful period in his life," that no client lost money, and that the respondent has a strong record of community service.
Findings and Conclusion
In view of the evidence adduced at the hearing and the respondent's admissions, we find that the Special Referee properly sustained all four charges. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted. In determining an appropriate measure of discipline, we have considered in mitigation, inter alia, the respondent's pro bono work and his contributions in the legal and civic community. We reject as mitigation the respondent's contention that he committed the charged misconduct because he was undergoing a stressful period in his life. The respondent admitted that he failed to properly manage his escrow account until the Grievance Committee's investigation, and the record indicates that this mismanagement predated the respondent's arrest. The respondent also committed a crime, was caught, and was prosecuted. The respondent now wishes to use the fact that he suffered stress as a result of being caught for his crime as mitigation for further misconduct that he committed. There is no dispute that the respondent was stressed during the period of his prosecution, but such stress was caused by the respondent's own criminal conduct, a situation he created, and cannot be used to mitigate the respondent's disregard of his fiduciary duties.
Notwithstanding the mitigation advanced, we find that the respondent failed to honor his obligations as a fiduciary and repeatedly misappropriated clients funds, which inured to his own [*5]benefit.
Under the totality of the circumstances, we find that the respondent's misconduct warrants his suspension from the practice of law for a period of two years.
LASALLE, P.J., DILLON, BARROS, CONNOLLY AND CHRISTOPHER, JJ., concur.
ORDERED that the Grievance Committee's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that the respondent, Darmin T. Bachu, is suspended from the practice
of law for a period of two years, commencing September 19, 2025, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than March 19, 2027. In such application (see 22 NYCRR 1240.16), the respondent shall furnish satisfactory proof that during the period of suspension, he (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) otherwise properly conducted himself; and it is further,
ORDERED that the respondent, Darmin T. Bachu, shall comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Darmin T. Bachu, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Darmin T. Bachu, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Clerk of the Court